IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CEDRIC MACK
                     Plaintiff,

vs.                                         Case No. 21-4038-SAC-ADM

J.M. SMUCKER CO. and
FOCUS WORKFORCE MANAGEMENT,
INC.,
                     Defendants.

**MEMORANDUM AND ORDER**

This employment discrimination and fraud action is before the court upon motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) filed by each defendant. A motion to strike is also pending.

I. Plaintiff's complaint

Plaintiff's pro se complaint consists of two documents – Doc. No. 1 (a "civil complaint") and Doc. No. 1-1 (an "employment discrimination complaint" with attached exhibits). Plaintiff generally alleges race discrimination, retaliation, fraud, intolerable working conditions and constructive discharge. More specifically, he asserts that from August 2019 into November 2019, he was subjected to disparate treatment because he is African-American, including being monitored or scrutinized more closely, treated harshly and subjected to verbal harassment.

Plaintiff alleges that he was employed at Focus Workforce Management (FWM). Doc. No. 1, p. 2. He states that he began working with FWM in Missouri. Then, he had his paperwork

1

transferred to FWM in Topeka, Kansas and was assigned by FWM to a job as a packer with defendant J.M. Smucker Co. (JMS), where he began working in August 2019. Plaintiff claims that he felt endangered, threatened and belittled, and reported this to his supervisor or supervisors. It is not clear from the complaint whether the supervisors worked for JMS or FWM.

Plaintiff claims he was assigned to do the hard jobs or jobs other workers did not want and received no relief when he complained. He asserts that he was followed by white employees, intimidated, given hateful looks and called names. Plaintiff also claims that PPE rules were enforced against him, but not against white employees.

Plaintiff states that he turned in his PPE gear and left the job when he was told it would be a problem if he did not switch his job with someone else. He reported that he couldn't take the mental abuse and that it was evidence that he was not wanted as an employee. Plaintiff also claims he received harassing phone calls from FWM. Plaintiff asserts that both defendants engaged in an ongoing pattern of race discrimination against plaintiff which included derogatory racial comments, bullying and harassment.

Plaintiff filed an administrative complaint with the Kansas Human Rights Commission (KHRC) on November 25, 2019. Doc. No. 1-2, p. 11. The administrative complaint names JMS as respondent, but states in the body that plaintiff was employed by "Topeka

2

Workforce Center" and assigned to JMS as a packer. Id. Plaintiff alleged that JMS "aided and abetted Topeka Workforce Center" in discrimination and harassment. Id. at p. 12.

Plaintiff alleges that he made the administrative complaint with the KHRC over the phone which led to the filing of the complaint against the "wrong company." Doc. No. 1-1, p. 7. Plaintiff states that he gave the correct employer's information to the KHRC and that the complaint "was filed dual on both defendants." Id. Plaintiff refers to the "correct company" as FWM. Id. Plaintiff claims that the KHRC "failed to properly adjust" his complaint. Id. at p. 8. In his "civil complaint", plaintiff asserts that he has presented his claims to the KHRC and that it "mishandled" his complaint. Doc. No. 1 at p. 5. He further alleges that the EEOC issued a right-to-sue letter. Id.

The complaint states that plaintiff's claims are brought under the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 1981, and the Thirteenth and Fourteenth Amendments. The complaint also asserts fraud, which is a state law claim.

II. Pro se standards

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. See Green v. Dorrell, 969 F.2d

915, 917 (10th Cir. 1992). Conclusory allegations without supporting facts are considered "insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). The court "will not supply additional factual allegations to round out a [pro se] plaintiff's complaint or construct a legal theory on plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997). However, "if the court can reasonably read the pleadings to state a valid claim on which the [pro se} plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority [or] his confusion of various legal theories." Hall, 935 F.2d at 1110.

III. Rule 12(b)(6) standards

Pursuant to Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief may be granted." A Rule 12(b)(6) motion requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court accepts the plaintiff's well-pled factual allegations as true and views them in the light most favorable to the plaintiff. United States v. Smith, 561 F.3d 1090, 1098 (10th Cir. 2009). The court may also consider the exhibits attached to the complaint. Id.

The court, however, is not required to accept legal conclusions alleged in the complaint as true. Iqbal, 556 U.S. at 678. "Thus, mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice" to state a claim. Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting Twombly, 550 U.S. at 555).

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). A plausibility analysis is a context-specific task depending on a host of considerations, including judicial experience, common sense and the strength of competing explanations for the defendant's conduct. See id. at 679-80. At this point, the court's role is not to weigh potential evidence the parties might present at trial but to assess whether the complaint alone is legally sufficient to state a claim for relief. See Bell v. Fur Breeders Agricultural Co-op, 348 F.3d 1224, 1230 (10th Cir. 2003); MacArthur v. San Juan County, 309 F.3d 1216, 1221 (10th Cir. 2002)(quotation omitted).

IV. JMS's Motion to Dismiss

JMS argues in its motion to dismiss that plaintiff's Title VII action against JMS should be dismissed because plaintiff does

5

not allege that he was an employee of JMS and because plaintiff did not obtain a right-to-sue letter after bringing an administrative complaint against JMS.

A. Employment relationship

An employment relationship is critical to making out a prima facie case under Title VII. Knitter v. Corvias Military Living, LLC, 758 F.3d 1214, 1225 (10th Cir. 2014). The existence of an employment relationship between plaintiff and JMS is decided by whether JMS determined or co-determined the essential terms and conditions of employment. See Bristol v. Board of County Commissioners, 312 F.3d 1213, 1218 (10th Cir. 2002). The Tenth Circuit "chooses among three different tests to determine whether a defendant is an employer depending on the situation: (i) the hybrid test; (ii) the joint employer test; and (iii) the single employer test." Knitter, 758 F.3d at 1226. The hybrid test and the single employer test do not appear to have any possible application here. The Tenth Circuit has described the joint employer test as follows:

> Under the joint employer test, two entities are considered joint employers if they share or co-determine those matters governing the essential terms and conditions of employment. Both entities are employers if they both exercise significant control over the same employees. An independent entity with sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer within the scope of Title VII.

> Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances. Additional factors courts consider for determining control under the joint employer test include the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; day-to-day supervision of employees, including employee discipline; and control of employee records, including payroll, insurance, taxes and the like.

Id. (quotations, ellipses and citations omitted).

Plaintiff's allegations are too conclusory and vague for the court to find a plausible claim that JMS had an employment relationship with plaintiff for the purposes of Title VII. Plaintiff's allegations do not address the relevant factors and make only broad claims that JMS was an aider and abetter or that both defendants indulged in egregious or illegal behavior. Plaintiff's allegations fail to tie a specific illegal action to JMS. Therefore, the court finds that plaintiff's Title VII claims against JMS are subject to dismissal.

B. Exhaustion

JMS contends that plaintiff's Title VII claims should be dismissed because plaintiff did not receive a right-to-sue letter. JMS supports this contention by submitting an exhibit showing that the KHRC closed the administrative complaint against JMS because it found that plaintiff did not have an employee-employer relationship with JMS. Doc. No. 21-1.

7

The law has been clarified in recent years that a failure to exhaust is not a jurisdictional defect; it is an affirmative defense. Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1185 (10th Cir. 2018). A plaintiff is not required to plead against affirmative defenses in a federal court complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007). Still, the court in its discretion could consider defendant JMS's exhaustion argument if it is "properly presented" as a motion to dismiss under Rule 12(b)(6) (see Smith v. Cheyenne Retirement Investors L.P., 904 F.3d 1159, 1164 (10th Cir. 2018)), or by converting the motion to one for summary judgment since it relies upon matters outside of the pleadings, i.e., the closure letter, Doc. No. 21-1.[1] See Weise v. Casper, 507 F.3d 1260, 1267 (10th Cir. 2007). In exercising this discretion, the court is cognizant that circumstances can excuse the failure to obtain a right-to-sue letter or the failure to file a timely charge. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)(filing a timely charge with the EEOC is subject to waiver, estoppel and equitable tolling); Pietras v. Board of Fire Com'rs, 180 F.3d 468, 474 (2nd Cir. 1999)(failure to obtain a right-to-sue letter is a condition that can be waived by the parties or

---

[1] Under Rule 12(b)(6), the court may consider documents referred to in the complaint if they are central to plaintiff's claims and there is no dispute as to authenticity. Smallen v. The W. Union Co., 950 F.3d 1297, 1305 (10th Cir. 2020). Even if the court were to consider the closure letter as such a document, the court would still deny the motion for dismiss for failure to exhaust because the court believes there are other issues alluded to in the pleadings which indicate that the issue is better left to a more fully developed motion.

8

the court, citing cases from three other circuit courts); Surrell v. California Water Service Co., 518 F.3d 1097, 1105 (9th Cir. 2008)(entitlement to right-to-sue letter is more important than receipt of a right-to-sue letter); Purrington v. University of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993)(timely filing of administrative charge may be equitably tolled where plaintiff has been lulled into inaction by past employer, state or federal agencies or the courts).

Plaintiff alleges more than once that his administrative complaint was mishandled. Defendants JMS and FWM do not attempt to address these allegations. Upon due consideration, the court declines to convert JMS's motion to one for summary judgment and finds that the affirmative defense is not properly considered on this record with a Rule 12(b)(6) motion. See Kina v. Dept. of Children and Families Vocational Rehabilitation Services, 2021 WL 2822536 *2-3 (D.Kan. 7/7/2021)(denying Rule 12(b)(6) motion arguing that amended EEOC charge was never actually filed, when there were claims of EEOC negligence which would support a claim of exhaustion); Dunn v. Tutera Group, 181 F.R.D. 653, 656 (D.Kan. 1998)(denying 12(b)(6) motion and considering upon summary judgment issue of whether plaintiff exhausted her administrative remedies and received a right-to-sue letter, stating "it is within the discretion of the district court to consider several factors

9

. . . after each side has had an opportunity to fully address the question." (interior quotation omitted)).

   C. Section 1981

Like Title VII, Section 1981 provides a federal remedy against racial discrimination in private employment. The legal analysis for claims under the two statutes is identical. McCurry v. Kenco Logistics Services, LLC, 942 F.3d 783, 788 (7th Cir. 2019); see also Lounds v. Lincare, Inc., 812 F.3d 1208, 1221 (10th Cir. 2015).

As with plaintiff's Title VII claim, the court finds that plaintiff has not alleged facts which produce a plausible claim that JMS exercised sufficient control over his employment to be found liable under § 1981 for the racial discrimination described in the complaint. Therefore, plaintiff's § 1981 claim against JMS is subject to dismissal.

   D. Thirteenth Amendment

The Thirteenth Amendment prohibits slavery and involuntary servitude. The Thirteenth Amendment has generally been applied to situations where physical labor was coerced by physical coercion or legal compulsion. See United States v. Kozminski, 487 U.S. 931, 942-44 (1988). Rather than being forced to work, plaintiff alleges that he was compelled to leave work and become unemployed by the conditions he faced. Upon review, the court finds that plaintiff's complaint does not state a plausible Thirteenth Amendment violation. See Jones v. Ocwen Financial Corporation,

10

2019 WL 6182822 *4 (M.D.Fla. 6/26/2019)(dismissing Thirteenth Amendment claim where plaintiff did not allege she had no alternative but to work for defendants); Kearns v. Orr, 1994 WL 173895 *8 (D.Kan. 4/20/1994)(same); see also Martinez v. Bohls Bearing Equipment Co., 361 F.Supp.2d 608, 614 (W.D.Tex. 2005)(Thirteenth Amendment does not create a cause of action for employment discrimination)  In addition, it is noted that other courts have held that the Thirteenth Amendment does not support a private right of action against a private entity.  See Doe v. Siddig, 810 F.Supp.2d 127, 135-36 (D.D.C. 2011); see also Jones, at *3 (citing cases).

E. Fourteenth Amendment

As JMS has argued, the Fourteenth Amendment is directed at the States and can be violated only by conduct that may be characterized as "state action." Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982).  The Fourteenth Amendment must be enforced through 42 U.S.C. § 1983 which requires state action as an element.  See Gallagher v. Neil Young Freedom Concert, 49 F.3d 1442, 1446-47 (10th Cir. 1995).  Plaintiff does not allege facts demonstrating that the State or a state actor was involved in the discrimination he describes.  Therefore, he has not stated a claim for a Fourteenth Amendment violation.

F. <u>Fraud</u>

To prove a claim of fraud, the following elements must be shown:  1) false representations made as statements of existing and material fact; 2) representations known to be false by the party making them or recklessly made without knowledge concerning them; 3) representations intentionally made for the purpose of inducing another party to act upon them; 4) reasonable reliance on the representations by the other party; and 5) damages.  <u>Kelly v. VinZant</u>, 197 P.3d 803, 808 (Kan. 2008).  Under the federal rules of pleading, a fraud claim must be stated with particularity.  Fed.R.Civ.P. 9(b).  Thus, "a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof . . . the who, what, where and when of the alleged fraud."  <u>Swimwear Solution, Inc. v. Orlando Bathing Suit, LLC</u>, 309 F.Supp.3d 1022, 1045 (D.Kan. 2018)(quotations omitted).

A "broad reading of [a <u>pro se</u>] plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  <u>Hall</u>, 935 F.2d at 1110.  Here, plaintiff merely states that JMS acted fraudulently.  Doc. No. 1, p. 4.  Plaintiff's allegations fall far short of stating facts which describe a plausible claim of fraud against JMS.  Therefore, the fraud claim is subject to dismissal.

12

See Muathe v. Fifth Third Bank, 2014 WL 5341984, *3 (D.Kan. 10/21/2014).

V. FWM's motion to dismiss

    A. Title VII

Like defendant JMS, FWM presents an exhaustion argument as grounds to find that plaintiff has failed to state a plausible Title VII claim. FWM notes that plaintiff did not name FWM as a respondent in an administrative charge dated November 27, 2019. JMS was the respondent in that charge. Plaintiff did name FWM as the respondent in an administrative charge dated October 27, 2020, but FWM argues that charge was filed too late.

As with the JMS's motion to dismiss, the court believes the administrative exhaustion issues raised in FWM's motion to dismiss are better considered upon a more complete record. Therefore, the court shall deny the motion to dismiss as to the Title VII exhaustion arguments without prejudice to the issue being raised again.

    B. Section 1981

FWM did not seek to dismiss plaintiff's § 1981 claim in the memorandum in support of the motion to dismiss. FWM's reply brief, however, suggests that plaintiff has dropped that claim because plaintiff did not mention it in his response brief. It is not clear to the court that plaintiff intends to drop the § 1981 claim.

Therefore, the court shall not dismiss it upon FWM's suggestion in its reply brief.

C. Thirteenth Amendment and Fourteenth Amendment claims

The court shall dismiss these claims against FWM for the reasons explained in sections IV(D) and IV(E) of this order.

D. Fraud

Plaintiff does not allege that FWM made a false representation either intentionally or recklessly that plaintiff relied upon and that such reliance caused plaintiff damages. Therefore, plaintiff's fraud claim against FWM is subject to dismissal. See Balboa Threadworks, Inc. v. Stucky, 2006 WL 1128689 *2 (D.Kan. 4/27/2006)(discussing elements of a fraud claim).

VI. FWM's motion to strike

FWM has filed a motion to strike Doc. No. 29 which is a "response" by plaintiff to FWM's "partial answer" to the complaint – Doc. No. 24.[2] The response reacts paragraph by paragraph to FWM's "partial answer." The court shall construe plaintiff's "response" as a reply under Fed.R.Civ.P. 7(a). See Coleman v. McKenzie-Kelly, 2021 WL 1948469 *1 (S.D.Miss. 4/14/2021)(taking similar approach). A reply to an answer may be filed, "if the court orders one" pursuant to Fed.R.Civ.P. 7(a)(7). The court has not ordered a reply in this case. Nor does one appear necessary

---

[2] Pursuant to D.Kan.R. 6.1(d)(1), plaintiff had 14 days to respond to the motion to strike. Plaintiff has not filed a timely response.

by rule or otherwise.[3] As the reply is unauthorized and unnecessary, the court shall order that it be stricken and that the motion to strike be granted. See Coleman; Long v. Morris, 2007 WL 677685 *1 (D.Kan. 3/2/2007); Hansen v. Wheaton Van Lines, Inc., 2005 WL 8156019 *2 (S.D.Fla. 8/24/2005).

VII. Opportunity to amend

"Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded . . . an opportunity to amend the complaint before the motion is ruled upon." Neitzke v. Williams, 490 U.S. 319, 329 (1989). The court shall grant plaintiff leave to file an amended complaint before November 1, 2021.

VIII. Conclusion

FWM's motion to strike (Doc. No. 34) shall be granted and Doc. No. 29 shall be stricken. The motions to dismiss by JMS and FWM (Doc. Nos. 20 and 22) are granted in part against plaintiff's claims under the Thirteenth Amendment and Fourteenth Amendment. Plaintiff is granted leave to file an amended complaint as to plaintiff's other claims before November 1, 2021. If plaintiff does not file an amended complaint, the court shall grant defendant JMS's motion to dismiss against all claims and shall grant defendant FWM's motion to dismiss against all claims except plaintiff's Title VII claim and § 1981 claim. If plaintiff files

---

[3] Under Fed.R.Civ.P. 8(b)(6), "[i]f a responsive pleading is not required, an allegation is considered denied or avoided."

an amended complaint against either or both defendants, then the defendant or defendants named may refile a motion to dismiss directed against the amended complaint which the court shall consider after the parties have briefed their arguments in accordance with the local rules and any applicable scheduling order.

**IT IS SO ORDERED.**

Dated this 30th day of September 2021, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U.S. District Senior Judge