IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CEDRIC MACK
                Plaintiff,

vs.                                       Case No. 21-4038-SAC-ADM

J.M. SMUCKERS CO. and
FOCUS WORKFORCE MANAGEMENT,
INC.,
                Defendants.

**MEMORANDUM AND ORDER**

This is an employment discrimination action which is before the court upon separate summary judgment motions filed by the two defendants, Focus Workforce Management (FWM) and J.M. Smucker Co. (JMS). Plaintiff proceeds pro se.

I. Summary judgment standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Such a showing may be made with citation "to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED.R.CIV.P. 56(c)(1)(A). The court views the evidence and draws all reasonable inferences therefrom in a light most favorable to the nonmoving party. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002). An issue of fact is "genuine" if "there is sufficient

1

evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  Unsupported or conclusory allegations, standing alone, do not create a genuine issue of material fact.  Conaway v. Smith, 853 F.2d 789, 792 n.4 (10h Cir. 1988).  The moving party may demonstrate an absence of a genuine issue of material fact by pointing out a lack of evidence for the other party on an essential element of that party's claim.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(quoting Adler, 144 F.3d at 671).

Under the Local Rule 56.1, a brief in support of a summary judgment motion must include a section that contains a numbered statement of material facts as to which the movant contends no genuine issue exists.  The facts must refer to the portions of the record upon which the movant relies.  A memorandum in opposition to a motion for summary judgment must contain a section with a statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute must refer to the portions of the record upon which the opposing party relies and refer, if applicable, to the number of the movant's fact that is disputed.  The party in opposition may also set forth additional facts upon which he or she relies supported by references in the record.  Material facts of the movant or the opposing party may be

deemed admitted for the purpose of summary judgment unless "specifically controverted" by the other side. D.Kan.R. 56.1.

The parties have been notified of the court's summary judgment guidelines in the pretrial order (Doc. No. 87, p. 14), D.Kan.R. 56.1, and the notice to pro se litigants at Doc. No. 92.

## II. Pro se pleadings

"A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A pro se litigant, however, is not relieved from following the same rules of procedure as any other litigant. See Green v. Dorrell, 969 F.2d 915, 917 (10th Cir. 1992). In this matter, plaintiff has not followed the rules governing a response to a summary judgment motion. He has failed to properly respond to the facts asserted by defendants with properly enumerated replies that are clearly linked to portions of the record. Also, plaintiff's additional facts are not properly substantiated.

## III. Plaintiff's sur-replies and defendants' motion to strike

At Doc. Nos. 101 and 102, plaintiff has improperly filed sur-replies (that is, responses to the defendants' reply briefs) without seeking leave from the court. Defendants have filed a motion to strike the sur-replies. Doc. No. 103. Sur-replies are permitted only with leave of the court which is rarely given. James v. Boyd Gaming Corporation, 522 F.Supp.3d 892, 902-03 (D.Kan.

2021); Taylor v. Sebelius, 350 F.Supp.2d 888, 900 (D.Kan. 2004). The court is unaware of any circumstances, such as new arguments or new evidence advanced by defendants in their reply briefs, that would warrant filing a sur-reply in this case. Plaintiff has not offered a justification for a sur-reply or filed a response to the motion to strike.

The court shall grant the motion to strike the sur-replies to the extent that the court shall disregard the sur-replies. Shaw v. T-Mobile USA, Inc., 2021 WL 2206541 *9-10 (D.Kan. 6/1/2021); Taylor, 350 F.Supp.2d at 900; Humphries v. Williams Nat. Gas. Co., 1998 WL 982903 *1 (D.Kan. 9/23/1998). Even if the court considered the arguments and materials presented in Doc. Nos. 101 and 102, the court would still grant defendants' motions for summary judgment for the reasons explained below.

IV. Plaintiff's claims

The pretrial order "supersedes all pleadings and controls the subsequent course of this case." Doc. No. 87, p. 1. According to the pretrial order, plaintiff's claims are that FWM and JMS "violated Mack's rights [under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981] by participating in ongoing race discrimination and harassment in that Mack was subjected to harder work than the other employees, and Mack was followed around and taken off easy jobs to be assigned to harder ones." Doc. No. 87, p. 10.

V. <u>FWM's and JMS's motions for summary judgment shall be granted.</u>

   A. <u>Uncontroverted facts</u>

Upon review of defendants' briefs in support of summary judgment, plaintiff's responses thereto, and the stipulations in the pretrial order, the following facts appear to uncontroverted for purposes of this order.

FWM provides direct hire, staffing and onsite workforce management services to manufacturing and warehouse companies. Plaintiff began working for FWM in Topeka, Kansas on August 2, 2019. Plaintiff received and signed a copy of the company's Handbook and policies when he started his employment. The Handbook states "<u>FOCUS IS YOUR EMPLOYER</u>" on the first page.

JMS was a client of FWM. FWM assigned plaintiff to work at the JMS Topeka plant as a packer. Plaintiff's first day at the JMS plant was August 29, 2019. Plaintiff worked there a total of 20 days over approximately three months. Work assignments for FWM employees were selected on a first come, first served basis. Employees not selected to work received priority for selection the following day. The assignment of tasks was based on the specific needs of the day.

Plaintiff voluntarily terminated his employment with FWM on or about November 24, 2019. Plaintiff was fed up that he was asked to transfer to either a harder job or one that no else wanted to

do. He turned in his PPE gear and left without explaining his reasons. Plaintiff received calls from FWM for months thereafter regarding new employment opportunities. Plaintiff claims that one call used the n-word and that another call told plaintiff to get out of town.

Plaintiff did not complain to anyone at JMS about discrimination or harassment. Plaintiff did not complete a job application with JMS. He was not interviewed by JMS and never completed any paperwork for JMS. JMS did not provide pay or benefits to plaintiff and maintained no paperwork regarding plaintiff's assignment to the JMS plant.

FWM employees at JMS used separate machines to clock in and out of their shifts. Their time records were kept by FWM. FWM employees wore street clothes, not JMS shirts at the job site. They were not directly supervised by JMS employees, although JMS personnel gave instructions regarding safety, PPE and the completion of job tasks. Plaintiff was never disciplined by JMS.

B. FWM's arguments for summary judgment[1]

Both 42 U.S.C. § 1981 and Title VII (42 U.S.C. § 2000e) make it unlawful to racially discriminate against any individual with respect to his employment. Section 1981 states that all persons

---

[1] FWM has asserted an administrative exhaustion argument against plaintiff's Title VII claim. The court does not reach that argument in this order. The court finds that even if plaintiff properly and timely filed an administrative charge against FWM, plaintiff's claims of racial discrimination would not prevail before a reasonable factfinder following the law.

"shall have the same right to make and enforce contracts . . . as is enjoyed by white citizens."  Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of an individual's race."  42 U.S.C. § 2000e-2(a)(1).

The elements of a race discrimination claim under § 1981 or Title VII are the same.  Wilson v. Textron Aviation, Inc., 820 Fed.Appx. 688, 692 (10th Cir. 2020).  A plaintiff must show for a prima facie case that:  1) he belongs to a protected class; 2) he suffered an adverse employment action; and 3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  Id.  An adverse employment action is a "'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007)(quoting Hillig v. Rumsfeld, 381 F.3d 1028, 1032-33 (10th Cir. 2004)).  "'[A] mere inconvenience or an alteration of job responsibilities' does not qualify" as an adverse employment action.  Ford v. Jackson National Life Ins. Co., 45 F.4th 1202, 1222 (10th Cir. 2022)(quoting Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1279 (10th Cir. 2010)).

7

The substantive standards for a § 1981 and a Title VII claim of a hostile work environment are also the same. Lounds v. Lincare, Inc., 812 F.3d 1208, 1221 (10th Cir. 2015). These standards require a plaintiff to show: 1) he is a member of a protected group; 2) he was subject to unwelcome harassment; 3) the harassment was based upon race; and 4) the harassment was so severe and pervasive that it altered a term, condition or privilege of plaintiff's employment and created an abusive work environment. Id. at 1222. To survive summary judgment, a plaintiff must show that the work environment was both objectively and subjectively hostile. Payan v. United Parcel Service, 905 F.3d 1162, 1171 (10th Cir. 2018). Courts consider such factors as frequency, severity, whether its physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance. Id. Run-of-the-mill boorish, juvenile or annoying behavior does not meet the standard for a hostile work environment claim. Id. at 1170-71.

Both motions for summary judgment discuss incidents of alleged discrimination which plaintiff has mentioned in his deposition. Plaintiff alleges that he was criticized by an unnamed individual for not wearing appropriate PPE and chastised and name-called by two unidentified Caucasian employees for not walking within yellow safety lines. Plaintiff has further asserted that he felt he was being followed around the plant, but he has not

8

stated how often this happened or who followed him. Also, plaintiff claims that an unidentified male employee, while grousing that he was "tired of this stuff," knocked some things that didn't belong to plaintiff off a table where plaintiff was sitting during a lunch period. The summary judgment record does not link any of these incidents to FWM employees or to a racial motivation.

Plaintiff has also alleged that he was sent home when work was not available. Plaintiff, however, again does not offer proof that plaintiff was denied work because of his race. Indeed, the evidence presented so far indicates that the FWM employees responsible for assigning work were African-American and Hispanic.

Plaintiff further claims that he was assigned to harder jobs than other employees and sometimes removed from an easier job and transferred to a harder job during the workday. Plaintiff has not stated how often this happened. Nor is it clear what jobs he was transferred to and from. Importantly, there is no evidence in the record that the job assignments were influenced by plaintiff's race.

Finally, plaintiff has alleged that on one occasion he was walking inside a FWM trailer and heard the n-word as well as an unidentified person say "why does he keep showing up." Plaintiff

does not claim that he had any subsequent interactions with the person or persons responsible.[2]

A reasonable jury could not find that plaintiff's allegations demonstrate racial discrimination in violation of § 1981 or Title VII for the following reasons.  First, plaintiff has not shown that he was the victim of disparate treatment in job assignments because of race.  "[P]ersonal belief [of discrimination] is insufficient to create an issue of material fact."  Ford, 45 F.4th at 1222.   Plaintiff does not compare his work frequency and physical difficulty of jobs with that of non-African-American workers.  Nor does he link the persons who made the job assignments to incidents of racial bias.  Aside from the phone calls which occurred sometime after plaintiff had already voluntarily left FWM's employment, there is only one example of blatant racial prejudice described by plaintiff and he does not link that to anyone who influenced plaintiff's work assignments.[3]

Second, plaintiff has not shown that he was subject to an adverse job action.  Plaintiff worked 20 days at JMS for FWM over a period of about three months.  That plaintiff missed some workdays because he was not given a job and that he sometimes was

---

[2] It is not clear whether plaintiff overheard one person or two people speak these comments in the trailer.

[3] In general, stray remarks have been considered insufficient to support an inference of discriminatory motivation.  See LaChica v. Russell Stover Chocolates, LLC, 853 Fed.Appx. 283, 288 (10th Cir. 2021); Campbell v. Mart, 2000 WL 826259 *2 (10th Cir. 2000); Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994).

10

assigned or moved to less desirable tasks that required heavy lifting, does not establish an adverse employment action.  There is no claim that his rate of pay, title, or chance for advancement was diminished because of his job assignments.  In comparable situations, other courts have rejected employment discrimination claims.  See Faragalla v. Douglas County School Dist., 411 Fed.Appx. 140, 155-56 (10th Cir. 1/12/2011)(being assigned excessive copying assignments and a heavier caseload as an educational assistant did not amount to an adverse employment action); Rogers v. Apria Healthcare, Inc., 2013 WL 3773838 *6 (D.Kan. 7/17/2013)(assignment of additional phone answering duties and new-hire training was not an adverse employment action); Grant v. New York State Office for People with Developmental Disabilities, 2013 WL 3973168 *7 (E.D.N.Y. 7/30/2013)(assignment to more physical tasks was not an adverse employment action where assignments did not exceed scope of job duties); Campos v. Coast Personnel Services, Inc., 2012 WL 2047605 *9 (N.D.Ala. 6/6/2012)(where work assignment is by definition temporary and does not affect employee's permanent job title or classification, there is no adverse employment action); Smith v. Century Concrete, Inc., 2006 WL 1877013 *8 (D.Kan. 7/6/2006)(plaintiff did not suffer a materially adverse employment action when he was forced to shovel rocks two times with a shoulder injury over a two to three-week period).

11

The court also holds that any reasonable jury would not find that the alleged harassment described by plaintiff, considering the totality of circumstances, was objectively so severe or pervasive as to amount to a hostile working environment.  See Brown v. LaFerry's LP Gas Co., 708 Fed.Appx. 518, 521-23 (10th Cir. 2017)(affirming dismissal where comments were not sufficiently extreme or pervasive to constitute a hostile work environment); Brown v. Lowe's Home Centers, 627 Fed.Appx. 720, 726-27 (10th Cir. 2015)(affirming summary judgment where incidents were neither pervasive nor severe); Al-Kazaz v. Unitherm Food Systems, Inc., 594 Fed.Appx. 460, 462-63 (10th Cir. 2014)(same); Morris v. City of Colorado Springs, 666 F.3d 654, 665-67 (10th Cir. 2012)(same);

For these reasons, FWM is entitled to summary judgment on the merits of plaintiff's discrimination claims.[4]

C. JMS's arguments for summary judgment

1. JMS was not plaintiff's employer

The record upon the summary judgment motions is clear.  FWM was plaintiff's employer, not JMS.  Nevertheless, JMS could be found liable under § 1981 or Title VII under the "joint employer" test.  Under this test,

---

[4] The pretrial order does not indicate that plaintiff is alleging a constructive discharge claim.  Nor does the court find that the record supports such a claim. Tran v. Trustees of State Colleges in Colorado, 355 F.3d 1263, 1270 (10th Cir. 2004)(a constructive discharge occurs when a reasonable person would view his working conditions as intolerable and would feel that he had no other choice but to quit).

12

> two entities are considered joint employers if they share or co-determine those matters governing the essential terms and conditions of employment. Both entities are employers if they both exercise significant control over the same employees. An independent entity with sufficient control over the terms and conditions of employment of a worker formally employed by another is a joint employer...

Knitter v. Corvias Military Living, LLC, 758 F.3d 1214, 1226 (10th Cir. 2014)(interior quotations omitted). The right to terminate an employee is the most important factor to consider. Id. A court may also consider the ability to set work rules and assignments, to set conditions of employment, including compensation and hours, to conduct daily supervision, to exercise discipline, and to control employee records, including payroll, insurance and taxes. Id. In this instance, while JMS may have had the right to ask FWM to reassign plaintiff to a different client, there is no evidence that JMS had the authority to terminate plaintiff or that JMS exercised firing authority over other FWM workers. FWM hired plaintiff, not JMS. FWM controlled plaintiff's compensation, hours and employment records. JMS exercised some supervisory authority at the work site and gave instruction concerning safety and the completion of tasks, but there is no indication that JMS exercised discipline over plaintiff. Under these circumstances, the court believes a reasonable jury could only conclude that JMS was not plaintiff's employer or joint employer. Cf., Hurst v. McDonough, 2022 WL 1090913 *2-4 (10th Cir. 4/12/2022)(affirming

13

summary judgment order which rejected a joint employer contention); Adams v. C3 Pipeline Construction Inc., 30 F.4th 943, 962-65 (10th Cir. 2021)(same); Knitter, 758 F.3d at 1228-31 (same).

### 2. Race discrimination

Even if JMS was considered a joint employer, JMS would still be entitled to summary judgment for the reasons already discussed in relation to FWM's motion. There is no material issue of fact which supports plaintiff's claim that his job assignments were motivated by racial prejudice, that he suffered an adverse employment action, or that he was the victim of a hostile work environment.[5]

## VI. Conclusion

For the above-stated reasons, the court grants defendants' motion to strike consistent with the above opinion. Doc. No. 103. The court further finds that summary judgment should be given against plaintiff's claims of employment discrimination and that the motions of FWM and JMS (Doc. Nos. 90 and 93) should be granted.

**IT IS SO ORDERED.**

Dated this 29th day of September 2022, at Topeka, Kansas.

s/Sam A. Crow
U.S. District Senior Judge

---

[5] The court does not reach JMS's argument that plaintiff has failed to mitigate his damages and is precluded from receiving backpay.