**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**August 15, 2023**

Christopher M. Wolpert
Clerk of Court

---

CEDRIC MACK,

    Plaintiff - Appellant,

v.

J.M. SMUCKERS CO.; FOCUS WORKFORCE MANAGEMENT, INC.,

    Defendants - Appellees.

No. 22-3195
(D.C. No. 5:21-CV-04038-SAC)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **MATHESON**, **BACHARACH**, and **ROSSMAN**, Circuit Judges.

---

Cedric Mack, proceeding pro se,[1] sued J.M. Smuckers Co. ("JMS") and Focus Workforce Management, Inc. ("FWM") for race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2000e-17. The district court granted

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Mr. Mack appears pro se, "we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

summary judgment against Mr. Mack, and he has timely appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Facts

On August 2, 2019, Mr. Mack began working for FWM in Topeka, Kansas. FWM provides direct hire, staffing, and onsite workforce management services to manufacturing companies. JMS is one of FWM's clients, and FWM assigned Mr. Mack to work at a JMS plant for 20 days over a three-month period. FWM made work assignments to the JMS plant on a first-come, first-served basis. FWM employees who were not assigned received priority for selection the following day.

Mr. Mack, who is African American, alleged the following incidents occurred during his time at the JMS plant:

- an unidentified line leader criticized him for not wearing appropriate personal protective equipment, while a white employee who also was not wearing appropriate equipment was not confronted;
- two other unidentified individuals called him an "idiot" and "boy" for walking outside yellow safety lines, and then followed him to the time clock and tried to block him from leaving;
- a white male employee knocked things off a table where Mr. Mack was having lunch;
- An employee called Mr. Mack the n-word at an FWM trailer; and
- unidentified white employees followed him around the JMS plant, apparently in an effort to intimidate Mr. Mack.

Mr. Mack alleges that he reported these incidents to supervisors but that no action was taken. Eventually, he quit his job with FWM. He alleges that even after quitting, he received phone calls from FWM about available jobs. Although FWM says these phone calls were automated, Mr. Mack contends that in one phone call he was told to get out of town, and another phone call used the n-word.

Mr. Mack filed a pro se action in federal district court in Kansas against JMS and FWM alleging race discrimination, hostile work environment, and retaliation in violation of Title VII and 42 U.S.C. § 1981; violation of the Thirteenth Amendment; and fraud. The district court granted the defendants' motion to dismiss all claims except for race discrimination and hostile work environment.[2]

The case then proceeded to discovery, and Mr. Mack filed several motions to compel. The district court denied each motion for failure to comply with the Federal Rules of Civil Procedure and the court's local rules.

After discovery was completed, the defendants filed separate motions for summary judgment. The defendants argued there were no genuine issues of material fact, and that the undisputed facts established they were entitled to judgment as a matter of law. JMS additionally argued it was not Mr. Mack's employer for Title VII purposes. After the defendants filed reply briefs, Mr. Mack filed sur-replies without first seeking leave of court. Accordingly, the district court granted the defendants'

---

[2] Mr. Mack does not appear to challenge the dismissal of his fraud, retaliation, and Thirteenth Amendment claims.

motions to strike the sur-replies. The district court granted the defendants' motions for summary judgment. This timely appeal followed.

## II. Discussion

Mr. Mack appears to make three arguments on appeal. He argues the district court erred in denying his motions to compel discovery and in granting the defendants' motions to strike Mr. Mack's summary judgment sur-replies. He also argues the district court erred in granting summary judgment on his race discrimination claims. We address each argument in turn.

### A. Denial of Mr. Mack's Discovery Motions

We review a district court's discovery rulings, including the denial of a motion to compel, for abuse of discretion. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1300 (10th Cir. 1999). The district court denied Mr. Mack's motions because: (1) his motions failed to certify that he in good faith conferred or attempted to confer with counsel for the defendants as required by Fed. R. Civ. P. 37(a)(1); (2) Mr. Mack failed to request a discovery conference with the court, which is required of a party before filing a discovery-related motion, *see* D. Kan. R. 37.1(a); and (3) he failed to attach to his motions the discovery requests at issue, as required by local rule, *see* D. Kan. R. 37.1(b). While we are sympathetic to the challenges faced by pro se litigants, we have long held that pro se litigants "must follow the same rules of procedure that govern other litigants." *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Mr. Mack appears to believe the defendants withheld evidence and speculates he would have discovered information to support his claims had the

court granted his motions. He does not, however, specify how the district court abused its discretion in denying the motions. Accordingly, we affirm.

### B. Striking of Mr. Mack's Sur-replies

We likewise review a district court's grant of a motion to strike a sur-reply for an abuse of discretion. *See In re Young*, 91 F.3d 1367, 1377 (10th Cir. 1996). Here, Mr. Mack filed two sur-replies after the defendants filed replies supporting their summary judgment motions. The district court's local rules, however, do not contemplate filing sur-replies in the regular course. *See* D. Kan. R. 7.1(a), (c) (briefing on motions limited to a motion, response, and reply). Instead, sur-replies "are permitted only with leave of court and under rare circumstances after good cause is shown." *James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 902-03 (D. Kan. 2021) (internal quotation marks omitted). Mr. Mack did not seek or obtain leave of court to file his sur-replies, and we discern no abuse of discretion in the district court's decision to strike them.[3]

Mr. Mack seems to argue the defendants' reply briefs cited new evidence, thus warranting an opportunity to respond. Presumably he invokes the example in *James* that "when a moving party uses their reply to present new material—*i.e.*, new

---

[3] Mr. Mack argues he did not "receive any information from the courts explaining to him he had a deadline to reply to the motion to strike" and claims the court did not give him "proper time" to respond. Opening Br. at 6. He has not demonstrated, however, that filing a response to the motion to strike would have made any difference. *See Walter v. Morton*, 33 F.3d 1240, 1244 (10th Cir. 1994) ("We find neither prejudice to the Defendants nor an abuse of . . . discretion in ruling before the filing of a reply brief.").

5

evidence or new legal arguments—and . . . the court *relies* on that new material, it should give the nonmoving party an opportunity to respond." *Id.* at 903. But the "new evidence" was Mr. Mack's unemployment records, which he acknowledges the defendants *did not* cite in their summary judgment briefing. Opening Br. at 5-6 ("The evidence was [Mr.] Mack's unemployment records, which the defendants did not file with their summary judgments which they already had access to but did not want to introduce into evidence due to the fact it would help strengthen the plaintiff's case."). Nor did the district court rely on the unemployment records. We therefore reject Mr. Mack's argument that the defendants presented new evidence warranting the filing of a sur-reply.

### C. Summary Judgment

Finally, Mr. Mack argues the district court erred in granting summary judgment in favor of JMS and FWM. We review summary judgment decisions de novo, "view[ing] the evidence and draw[ing] reasonable inferences therefrom in the light most favorable to the nonmoving party." *Talley v. Time, Inc.*, 923 F.3d 878, 893 (10th Cir. 2019) (internal quotation marks omitted). Summary judgment is required when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We [also] review de novo legal questions of statutory interpretation," such as "the legal test to determine the definition of 'employee' under Title VII." *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1225 (10th Cir. 2014).

### 1. JMS

The district court granted summary judgment in JMS's favor because it was not Mr. Mack's employer for purposes of Title VII. In arriving at this conclusion, the district court utilized the "joint employer" test set forth in *Knitter*. Under that test, "two entities are considered joint employers if they share or co-determine those matters governing the essential terms and conditions of employment." *Id.* at 1226 (internal quotation marks omitted). "Most important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances." *Id.* (internal quotation marks omitted). Additional factors include "the ability to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; day-to-day supervision of employees, including employee discipline; and control of employee records, including payroll, insurance, taxes and the like." *Id.* (ellipses and internal quotations marks omitted). We apply the *Knitter* test here since no one disputes that FWM and JMS are separate entities and that Mr. Mack was an employee rather than an independent contractor.

The undisputed facts reveal that JMS did not have the right to terminate Mr. Mack's employment, provided him no pay or benefits, and maintained no paperwork concerning his assignment to the JMS plant. FWM kept his time records and directly supervised his work at JMS. Although JMS personnel gave Mr. Mack instructions regarding safety and job tasks, "[s]ome degree of supervision . . . is to be expected when a vendor's employee comes on another business's work site." *Id.* at

7

1230. Mr. Mack insists in his opening brief that JMS had the right to terminate his employment under certain circumstances, and that JMS had control over the terms and conditions of his employment. He provides no record citation to support these assertions, and we have found nothing in the record to support them. *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("[C]onclusory statements do not suffice to create a genuine issue of material fact." (internal quotation marks omitted)). In short, we agree with the district court that no reasonable jury could find Mr. Mack was an employee of JMS. The district court therefore correctly granted summary judgment in favor of JMS.

### 2. FWM

Mr. Mack argues the district court erred in granting summary judgment to FWM on his race discrimination and hostile work environment claims.

#### a. Race Discrimination

To establish a disparate treatment claim based on race under Title VII, a plaintiff must show that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

The district court held Mr. Mack did not establish for summary judgment purposes that he suffered an adverse employment action. An adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision

8

causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (internal quotation marks omitted). Mr. Mack was not fired by FWM. Rather, he voluntarily terminated his employment. He asserts he was given less desirable tasks at JMS and required to wear personal protective equipment. But these allegations amount to "mere inconvenience[s] or . . . alteration[s] of job responsibilities," which do not qualify as adverse employment actions under applicable law. *Id.* (internal quotation marks omitted).

Mr. Mack also asserts that occasionally FWM sent him home when work was not available. But even if he suffered an adverse employment action on these occasions, he has not shown it occurred under circumstances giving rise to an inference of discrimination. *Luster*, 667 F.3d at 1095. FWM's policy is to assign work on a first-come, first-served basis, and employees not selected to work received priority for selection the following day. Mr. Mack has not shown that FWM applied that policy to him differently from other FWM employees. He alleges he was called the n-word on one occasion, but he did not tie that incident to any FWM employee responsible for making work assignments.

In short, we hold that the district court correctly granted summary judgment on Mr. Mack's race discrimination claim.

### b. Hostile Work Environment

A prima facie hostile work environment claim, whether brought under Title VII or § 1981, requires a plaintiff to show: (1) he is a member of a protected group; (2) he was subject to unwelcome harassment; (3) the harassment was based on

9

race; and (4) the harassment was so severe or pervasive that it altered a term, condition, or privilege of plaintiff's employment and created an abusive work environment. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1222 (10th Cir. 2015); *see also id.* at 1221 (elements for Title VII and § 1981 hostile-work-environment claims are the same). In assessing the fourth requirement, we must "assess whether the work environment is both subjectively and objectively hostile or abusive." *Id.* (brackets, emphasis, and internal quotation marks omitted). "In other words, it is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances." *Id.* The plaintiff must "show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (internal quotation marks omitted).

 Mr. Mack alleges (1) he was criticized by an unidentified line leader for not wearing appropriate personal protective equipment, while a white employee was not required to wear such equipment; (2) two unidentified white employees called him names (including "boy") for not walking within yellow safety lines, then attempted to block Mr. Mack from an exit; (3) he felt that he was followed around the plant, though he does not know by whom or how often; (4) an unidentified employee knocked some things off a table where Mr. Mack was sitting; and (5) he once heard the n-word in an FWM trailer, though he does not know who said it.

The last incident is most concerning because "[t]he n-word is a powerfully charged racial term." *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1234 (10th Cir. 2022) (internal quotation marks omitted). "Its use—even if done with benign intent and undirected at anyone specific—can contribute to a hostile work environment." *Id*. But a showing of "severe or pervasive" harassment must amount to more than "sporadic racial slurs." *Lounds*, 812 F.3d at 1223; *see Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) ("there must be a steady barrage of opprobrious racial comments" (internal quotation marks omitted)). "The important question is whether *the repeated utterance* of [the n-word] had the effect of contributing to the creation of a racially hostile work environment." *Lounds*, 812 F.3d at 1230 (emphasis added); *see also Savage v. Maryland*, 896 F.3d 260, 277 (4th Cir. 2018) ("[A]n employer's *repeated and continuous* use of that slur, among others, to insult African-American employees and customers, even when not directed specifically at the complaining employee, is sufficiently severe or pervasive . . . to create an unlawful hostile work environment." (emphasis added; internal quotation marks omitted)). Here, Mr. Mack has not alleged repeated and continuous utterances, nor has he alleged a supervisor used the offensive language. *See Lounds*, 812 F.3d at 1230 (single use by a supervisor might be sufficient).

The incidents Mr. Mack alleges are understandably distressing. But under our precedent and the record before us, this is not a case where "a rational jury could find that [his] workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter [his] conditions of employment."

*Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012); *see also Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).

We therefore affirm the district court's grant of summary judgment in favor of FWM.

### III. Conclusion

We affirm the district court's grant of summary judgment against Mr. Mack. We further direct the Clerk of Court to file on the public docket volume 3 of the record on appeal with references to Mr. Mack's social security number and birthdate redacted.

    Entered for the Court

    Veronica S. Rossman
    Circuit Judge